# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | | |
|---|---|---|
| CALVIN J. WILLIS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. |
| | : | 5:05-CV-420 (HL) |
| GEORGIA DEPARTMENT OF | : | |
| NATURAL RESOURCES, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**ORDER**

Before the Court is Defendants' Motion for Summary Judgment (Doc.18). For the reasons explained herein, Defendants' Motion is granted.

**I. FACTS AND PROCEDURAL HISTORY**

This action arises out of the alleged discriminatory termination of Plaintiff Calvin J. Willis by Defendants Georgia Department of Natural Resources ("Department"); Celia Franklin, Region III Manager; Wayne Escoe, Chief of Operations; Becky Kelly, Director of Parks; and Lonice Barrett, Commissioner of the Georgia Department of Natural Resources Parks and Historical Sites Division (collectively "Supervisors"). Viewing the facts in the light most favorable to Plaintiff as the nonmoving party, the Court finds as follows.

**A. Factual History**

1

Plaintiff Calvin Willis was hired by the Department on November 16, 1989, to serve as a Park Enforcement Ranger at High Falls State Park ("High Falls"). Plaintiff was promoted to Assistant Park Manager in 1993 and Park Manager in 1994. As Park Manager, Plaintiff was responsible for overseeing all personnel, maintaining the park, and managing the park's operating budget.

In 1999 or 2000, Plaintiff complained about the Department's policy regarding prior marijuana use for law enforcement officers. Plaintiff asserted that the Department's marijuana policy was unfair towards African-American applicants. In 2001, Defendant conducted an audit of High Falls. As several problems were discovered, Defendant Wayne Escoe and Plaintiff's immediate supervisor scheduled a meeting with Plaintiff to discuss the audit results. Deficiencies in the following areas were discussed: the petty cash balance, "the operating account balance, the partial payment of salary to an employee who was not actually present at work, the payment of certain park expenses, filing procedures, failure to balance the checkbook, splitting invoices, improper use of High Falls' credit card, failure to maintain the proper receipts for expenses, failure to properly maintain oil and gas logs, and failure to properly record inventory." (Defs.' Statement of Material Facts ¶ 28).

In addition, Plaintiff's own work schedule was scrutinized. Although Plaintiff asserts that he has the discretion to not work on Sundays, Plaintiff's supervisors were concerned that Plaintiff was taking off every Sunday. After discussing the issue, Plaintiff was instructed that he could take every other weekend off, but was expected to work a full day on each Sunday

when he was scheduled. Plaintiff asserts that "requiring him to work a full shift on Sunday during the 11:00 am hour was directed solely at him and not at Caucasian Park Managers." (Pla.'s Resp. Defs.' Mot. Summ. J. p. 9). According to Plaintiff, Defendants were aware of Plaintiff's faith and that he wished to worship during those hours.

After the meeting, "Plaintiff began working either Sunday morning or Sunday afternoon, but not all day Sunday as he had been instructed." (Defs.' Statement of Material of Facts ¶ 33; Willis Dep. p. 93). Because Plaintiff continued to fail to schedule himself at least every other weekend as he had been instructed, Plaintiff received a written reprimand on August 1, 2002. In response, Plaintiff filed a formal grievance regarding his written reprimand, alleging that he was being discriminated against based on his race. Thereafter, Plaintiff was denied a pay increase. In October 2002, the Department's Personnel Director, Frank Heiny, responded to Plaintiff's grievance and concluded that there was no evidence of discrimination.

Around the time that Plaintiff's first grievance was dismissed, Plaintiff received an unsatisfactory performance evaluation. On October 27, 2002, Plaintiff filed a second formal grievance in response to his performance appraisal.[1] Subsequently, Plaintiff filed a charge of discrimination with the Georgia Commission on Equal Opportunity ("GCEO") on January 15, 2003. Plaintiff also filed a charge of discrimination with the Equal Employment

---

[1]On February 12, 2003, Heiny responded to Plaintiff's second grievance and again concluded that there was no evidence of discrimination.

Opportunity Commission ("EEOC") at approximately the same time. Plaintiff received a dismissal and notice of rights concerning his GCEO charge on May 9, 2003, and he received a notice of right to sue regarding his EEOC charge on June 27, 2003.

On January 19, 2003, Joe Aikens, a patron of High Falls park, asked Plaintiff to accompany him to a private residence where Marc Mansfield was residing as a caretaker for the residence. Aikens told Willis that he need someone in law enforcement to accompany him to Mansfield's residence. Willis called Mansfield on a State of Georgia phone, informed him that he was a law enforcement officer, and that Aikens had asked Willis to accompany him to the property where Mansfield was residing. Subsequently, the Department received a complaint that Plaintiff misused his authority by attempting to gain access to a private residence. The Department investigated the call. Plaintiff admitted he made the call and said that it was a "stupid mistake." (Defs.' Statement of Material Facts ¶ 58). After the Department completed its investigation, it determined that Plaintiff's phone call to Mansfield exceeded his statutory law enforcement authority, violated Department policy, and the Department's Code of Ethics. As a result, Plaintiff was terminated on April 4, 2003. On July 14, 2003, Plaintiff filed a second charge of discrimination with the EEOC, alleging that he was discriminated against because of his race and that the Department retaliated against him.

**B. Procedural History**

Pursuant to the Rules of the Georgia Merit System, Plaintiff appealed his termination. Plaintiff's claim was initially heard by an Administrative Law Judge ("ALJ") of the State of

Georgia Office of State Administrative Hearings. The ALJ found that Plaintiff had "clearly" violated Department policy and the Code of Ethics, and that it was Plaintiff's "own poor judgment that caused DNR to initiate this action." (Defs.' Mot. Summ. J., Ex. 1). The ALJ, however, disagreed that Plaintiff's violation was deserving of termination and determined that he should be suspended for thirty (30) days without pay. The Department filed a request for review by the State Personnel Board. The State Personnel Board adopted the ALJ's findings of fact but concluded that the sanction imposed by the ALJ was too lenient. As a result, the State Personnel Board reinstated the Department's termination decision.

Plaintiff appealed the State Personnel Board's decision to the Superior Court of Monroe County, which reversed the State Personnel Board's termination decision. The Department appealed the Superior Court's decision to the Georgia Court of Appeals, which reversed the Superior Court's decision and upheld the Department's termination decision. Plaintiff then filed a petition for a writ of certiorari with the Georgia Supreme Court, which was denied. Thereafter, Plaintiff filed suit in this Court. Plaintiff has asserted (1) Title VII[2] claims against the Department and the Supervisors in their individual and official capacities; (2) a § 1983[3] claim against the Supervisors in their official capacity based on an Equal Protection violation; and (3) a § 1983 claim against all Defendants based on a Title VII violation.

---

[2] 42 U.S.C.A. §§ 2000e to 2000e-17 (West 2003).

[3] 42 U.S.C.A. § 1983 (West 2003).

5

## II. ANALYSIS

### A. Standard of Review

Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law." FED. R. Civ. P. 56(c). A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the Court must evaluate all of the evidence, together with any logical inferences, in the light most favorable to the nonmoving party. Id. at 254-55. The Court may not, however, make credibility determinations or weigh the evidence. Id. at 255; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). If the moving party meets this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the nonmoving party is not entitled to a judgment as a matter of law. Id. at 324-26. This evidence must consist of more

than mere conclusory allegations. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Under this scheme summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

**B. Plaintiff's Title VII Claims Against the Department**

Plaintiff alleges both a disparate treatment race discrimination claim and a retaliation claim. Plaintiff asserts the following in support of his disparate treatment claim: (1) High Falls was audited in late 2001; (2) beginning in February 2002 Plaintiff was not allowed to make the schedule for his park; (3) Plaintiff was over supervised in February 2002; (4) Plaintiff was forced to work on Sunday beginning in July 2002; (5) Plaintiff received a letter of concern on August 1, 2002; (6) Plaintiff was denied a pay increase on August 25, 2002; (7) Plaintiff was subjected to an intense investigation of a phone call he made on January 23, 2003; and (8) Plaintiff was terminated on April 4, 2003, because of his race. Plaintiff also asserts the following in support of his Title VII retaliation claim: (1) Plaintiff was harassed in 1999 or 2000 for complaining that the Department's marijuana policy had an unfair impact on African-American job applicants; (2) Plaintiff was harassed after he filed a formal grievance on August 5, 2002, asserting that he was being unfairly discriminated against based on his race; (3) Plaintiff was further harassed after he filed another formal grievance on October 27, 2002, in which Plaintiff against asserted he was being discriminated against based on his race; and (4) Plaintiff was terminated after he filed his first EEOC complaint.

### 1. Plaintiff's Title VII Claims Based on Termination

The Department contends that it is entitled to summary judgment on Plaintiff's Title VII claims based on his termination because Plaintiff's claim is barred by the doctrine of collateral estoppel. Pursuant to 28 U.S.C.A. § 1738 (West 2006),[4] federal courts must "give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." Kremer v. Chem. Constr. Corp., 456 U.S. 461, 466, (1982) (citing 28 U.S.C.A. § 1738). Federal courts, however, may only give preclusive effect to state court judgments when the litigants "had a 'full and fair opportunity' to litigate their claims and the prior state proceeedings statisfied 'the applicable requirements of due process.'"Gorin v. Osborne, 756 F.2d 834, 837 (11th Cir. 1985) (quoting Kremer, 456 U.S. at 480-82). Thus, Plaintiff's Title VII claim is barred by the doctrine of collateral estoppel only if two elements are met: "first, that the courts of the state from which the judgment emerged would do so themselves; and second, that the litigants had a 'full and fair opportunity' to litigate their claims and the prior state proceedings otherwise satisfied 'the applicable requirements of due process.'" Shields v. BellSouth Adver. and Pub. Co., Inc., 228 F.3d 1284, 1288 (11th Cir. 2000).

As to the first element, Georgia courts give preclusive effect to the decisions of administrative tribunals as affirmed by the state's courts. Gorin, 756 F.2d at 837 ("It is clear that Georgia courts would accord preclusive effect to the decision of an administrative tribunal as

---

[4]28 U.S.C.A. § 1738 provides in pertinent part: "The...judicial proceedings of any court of any such State...shall have the same full faith and credit in every court within the United States and its Territories and Possessions they have by law or usage in the courts of such State...." 28 U.S.C.A. § 1738.

affirmed by the Superior Court."); see Shields v. BellSouth Advertising & Pub. Corp., 273 Ga. 774, 778, 545 S.E.2d 898, 901 (2001) ("A judicial decision based upon administrative benefit hearings that determines the reasons for an employee's termination precludes relitigation of the causality issue in subsequent proceedings."); Woods v. Delta Air Lines Inc., 237 Ga. 332, 332, 227 S.E.2d 376, 377 (1976) (holding that the doctrines of res judicata and collateral estoppel are applicable to awards of the State Board of Workmen's Compensation on all questions of fact in matters in which it has jurisdiction); see also O.C.G.A. § 9-12-40 (2006).[5] Here, Plaintiff appealed his termination, and his claim was initially heard by an Administrative Law Judge ("ALJ") of the State of Georgia Office of State Administrative Hearings. (Defs.' Mot. Summ. J. Ex. 1). At the hearing, Plaintiff had the opportunity to present evidence and cross-examine witnesses. The ALJ determined that Plaintiff had "clearly" violated Department policy and the Code of Ethics. (Id.). Specifically, the ALJ rejected Plaintiff's "contention that the Department acted in retribution or retaliation for his allegations and discrimination," and found that "[i]t was the [Plaintiff's] own poor judgment that caused DNR to initiate this action." (Id.). Plaintiff's termination was eventually affirmed by the Georgia Court of Appeals, and the Georgia Supreme Court denied Plaintiff's writ of certiorari. (Defs.' Mot. Summ. J. Exs. 3-4).

Accordingly, the reason behind Plaintiff's dismissal has already been litigated, and the administrative tribunal, as affirmed by the Georgia courts, has determined that Plaintiff was not

---

[5]O.C.G.A. § 9-12-40 provides: "A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside." O.C.G.A. § 9-12-40.

9

terminated for discriminatory reasons. Specifically, the Georgia courts have already determined that Plaintiff was terminated for violating Department policy and the Code of Ethics by misusing his law enforcement authority when he placed a phone call to Mr. Mansfield as a favor for Mr. Aikens. Georgia courts would therefore give preclusive effect to the reasons behind Plaintiff's termination. Shields, 273 Ga. at 778, 545 S.E.2d at 901 ("In the arena of wrongful termination, the Georgia Court of Appeals has determined that collateral estoppel would bar the relitigation of the reasons behind an employee's dismissal.").

As to the second element, this Court must determine whether Plaintiff "had a 'full and fair opportunity' to litigate [his] claims and the prior state proceedings satisfied 'the applicable requirements of due process.'" Gorin, 756 F.2d at 837. In Gorin, a case similar to the one before the Court, the plaintiff was terminated from her employment with an agency that was operated by the Cobb County (Georgia) Board of Health. Id. at 835. The plaintiff appealed her termination to the State Personnel Board, where she received an adversarial hearing with the opportunity to present evidence and cross-examine witnesses. Id. The State Personnel Board affirmed the plaintiff's terminatinon, and the plaintiff appealed to the Cobb County Superior Court, which upheld her termination. Id. at 835-36. The plaintiff's subsequent appeal to the Georgia Court of Appeals was voluntarily dismissed. Id. at 836.

Thereafter, the plaintiff filed a § 1983 action in federal court, alleging that her termination violated her due process and equal protection rights. Id. The district court held that the plaintiff's claim was barred by the doctrines of res judiciata and collateral estoppel

because of the earlier proceedings before the State Personnel Board and the state courts. Id. On appeal, the plaintiff claimed that because the state court's review of the administrative board's findings was so narrow and deferential, the requirements of due process were not met, and therefore, the district court should not have given preclusive effect to the state proceedings. Id. at 837. The Eleventh Circuit rejected the plaintiff's argument and held that the plaintiff had a full and fair opportunity to litigate her claims in the prior state proceedings and that the applicable due process requirements were satisfied. Id. The Eleventh Circuit emphasized that the plaintiff was afforded a "'panoply of [administrative] procedures,'" which were "'complemented by administrative as well as judicial review.'" Id. (citing Kremer, 456 U.S. at 484)). Here, Plaintiff was afforded the same procedures as the plaintiff in Gorin. As in Gorin, Plaintiff had the opportunity to introduce evidence and cross-examine witnesses at his administrative hearing, and Plaintiff obtained state court review of the administrative decision. As a result, this Court finds that the procedures in this case afforded Plaintiff a full and fair opportunity to litigate his claims and satisfied the requirements of due process.

For these reasons, this Court finds that courts of the state of Georgia have given preclusive effect to the reasons behind Plaintiff's dismissal, that Plaintiff had a full and fair opportunity to litigate his claims, and that the proceedings satisfied the requirements of due process. As a result, this Court must give preclusive effect to the reasons behind Plaintiff's dismissal. Defendant is therefore entitled to summary judgment on Plaintiff's Title VII claims that are based on his termination.

Additionally, Defendant is entitled to summary judgment on Plaintiff's disparate treatment claim that the Department intensely investigated his phone call because of his race. Because Plaintiff has already litigated the issue of whether his termination for the inappropriate phone call was a prextext for race, it necessarily follows that the ALJ and the Georgia courts have already rejected Plaintiff's contention that the Department investigated his phone call because of his race. Accordingly, Defendant is entitled to summary judgment on this claim.

2. **Plaintiff's Remaining Title VII Claims Against the Department**

Plaintiff's remaining Title VII claims against the Department are not precluded by the doctrine of collateral estoppel because the claims have not been litigated. For the following reasons, the Department is also entitled to summary judgment on these Title VII claims.

Title VII provides that "in cases where the EEOC does not file suit or obtain a conciliation agreement, the EEOC 'shall so notify the person aggrieved and within 90 days after the giving of such notice a civil action may be brought against the respondent named in the charge ... by the person claiming to be aggrieved. . . .'" Zillyette v. Capital One Financial Corp., 179 F.3d 1337, 1339 (11th Cir. 1999) (citing 42 U.S.C. § 2000e-5(f)(1)). Thus, a potential Title VII plaintiff must file suit within ninety days of receiving notice that the EEOC has dismissed a plaintiff's charge of discrimination. Here, on June 27, 2003, Plaintiff received a right to sue letter regarding his first claim of discrimination filed with the EEOC but failed to file this lawsuit until November 1, 2005. Because Plaintiff failed to file within ninety days

of receiving his right to sue letter, Plaintiff is barred from relying on the allegations contained within his first charge of discrimination. On this basis, Defendant is precluded from relying on the following allegations to support his claims: (1) Plaintiff's claim that he was forced to work on Sundays; (2) the letter of concern Plaintiff received; (3) the denial of a pay increase; (4) the alleged harassment that occurred after he filed his first formal grievance; and (5) the harassment that occurred after he filed his second formal grievance.

In addition, before suing under Title VII, a plaintiff must first exhaust his or her administrative remedies. Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1317 (11th Cir. 2001) (citing Crawford v. Babbitt, 186 F.3d 1322, 1326 (11th Cir. 1999)). Exhaustion first requires that a plaintiff file a charge of discrimination with the EEOC. Id. (citing 42 U.S.C. § 2000e-5(b) (1994); Alexander v. Fulton County, 207 F.3d 1303, 1332 (11th Cir. 2000)). A plaintiff must do so within either 180 or 300 days[6] "after the alleged unlawful employment practice occurred." 42 U.S.C.A. § 2000e-5(e)(1) (West 2000). If a plaintiff fails to file before this time elapses, his claim is untimely. Therefore, unless the alleged acts of discrimination have been made the subject of a timely filed EEOC charge of discrimination, the alleged acts cannot

---

[6]The 300-day time period is utilized in those states that have entities with the authority to grant or seek relief with respect to unlawful employment practices and an employee files a grievance with that agency; in all other states, known as "non-deferral states," the charge must be filed within 180 days. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002). Because Georgia is a non-deferral state, the 180-day time period applies. Watson v. Blue Circle, Inc., 324 F.3d 1252, 1258 (11th Cir. 2003).

13

form the basis of a Title VII claim.[7] Alexander, 207 F.3d at 1332.

Here, Plaintiff's remaining charge of discrimination was filed on July 14, 2003. Plaintiff is therefore barred from relying on any alleged acts that occurred before January 15, 2003, which is 180 days prior to the date Plaintiff filed his charge. Accordingly, Plaintiff is also precluded from relying on the following allegations to support his claims: (1) the audit of High Falls in 2001; (2) that he was not allowed to make the schedule for his park in February 2002; (3) over supervision that occurred in February 2002; and (4) that he was harassed in 1999 or 2000 for complaining about the discriminatory effects of the Department's marijuana policy.

For these reasons, the Department's Motion for Summary Judgment on all of Plaintiff's Title VII claims is granted.

**C. Plaintiff's Title VII Claim Against Supervisors In Their Individual Capacities**

"Individual capacity suits under Title VII are . . . inappropriate." Busby v. City of Orlando,[8] 931 F.2d 764, 772. (11th Cir. 1991). "The relief granted under Title VII is against

---

[7]An alleged act of discrimination, not specifically included in the EEOC complaint, may form the basis of a Title VII claim if the alleged act of discrimination "was or should have been included in a reasonable investigation of the administrative complaint." See Griffin v. Carlin, 755 F.2d 1516, 1522 (11th Cir. 1985). However, because neither party presented argument or evidence addressing this issue, the Court is unable to conclude that any of the time-barred conduct was or should have been included in a reasonable investigation of the administrative complaint.

[8]Although Busby was decided prior to the 1991 Amendment to the Civil Rights Act, the Eleventh Circuit later affirmed Busby after the amendment in Cross v. Alabama, 49 F.3d 1490 (11th Cir.1995).

the employer, not the individual employees whose actions would constitute a violation of the Act." Id. at 772 (citing Clanton v. Orleans Parish School Board, 649 F.2d 1084, 1099 n.19 (5th Cir. 1981)); see also Yeldell v. Cooper Green Hospital, Inc., 956 F.2d 1056, 1060 (11th Cir. 1992) (holding Title VII actions are not appropriately brought against government officials in their personal capacities); Hinson v. Clinch County Board of Education, 231 F.3d 821, 826 n.6 (11th Cir. 2000) (holding Plaintiff was barred from bringing a Title VII action against individual defendants). Therefore, because Title VII does not provide for a cause of action against individual employees, the Court grants summary judgment to Defendants with respect to Plaintiff's Title VII claims against the Supervisors in their individual capacities.

**D. Plaintiff's Title VII Claim Against Supervisors In Their Official Capacities**

"Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" Kentucky v. Graham, 473 U.S. 159, 165 (1985) (quoting Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 690 n.55 (1978)). Thus, "[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Id. at 166. Furthermore, as state governments can be sued directly for violations of Title VII, Fitzpatrick v. Bitzer, 427 U.S. 445, 456 (1976), allowing Plaintiff to assert Title VII claims against the Department and the Supervisors in their official capacities would be redundant. Therefore, the Court grants summary judgment to Defendants with respect to Plaintiff's Title VII claims against the Supervisors in their official capacities.

15

## E. Plaintiff's 1983 Claim Based On Equal Protection Against Supervisors In their Official Capacities

"Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." Will v. Michigan Dept. Of State Police, 491 U.S. 58, 66 (1989). Because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," the principals governing whether a governmental entity can be sued under §1983 also apply when a claim is brought against a government official in his or her official capacity. Id. at 71. Thus, claims against a government official in his or her official capacity cannot generally be brought under § 1983. Id.

Although most claims against a governmental official in his or her official capacity are treated as claims against the government entity, "official-capacity actions for prospective relief are not treated as actions against the State." Graham, 473 U.S. at 167. Accordingly, a claim for prospective relief can be brought under § 1983 against a governmental official in his or her official capacity; however, a claim for retrospective relief is barred. Therefore, to the extent Plaintiff seeks damages, his § 1983 claim is barred. Further, Plaintiff's remaining § 1983 claim is a claim for prospective relief to prevent Defendants from discriminating against him in the future. As no such relief could be granted since Plaintiff no longer works at High Falls State Park, Plaintiff's § 1983 claim for prospective relief is barred as well. Thus,

the Court grants summary judgment to Defendants with respect to Plaintiff's § 1983 claim based on equal protection against the Supervisors in their official capacities.

**F. Plaintiff's 1983 Claim Based on Title VII Against All Defendants**

The case law in this circuit is in conflict as to whether or not an alleged violation of Title VII can provide the sole basis for an action under §1983. In Wu v. Thomas, 863 F.2d 1543 (11th Cir. 1989), the Eleventh Circuit concluded that a plaintiff's § 1983 claim based entirely upon an alleged violation of Title VII was a valid cause of action:

> Appellants did not invoke section 1983 to redress a fourteenth amendment violation. Section 1983 remedies deprivations of rights created by federal law as well as by the Constitution. (Citation omitted) By pleading section 1983, the appellants only seek the additional remedies that the section affords for the appellees' alleged violation of 42 U.S.C. § 2000e.

Id. at 1549 n.9. Nevertheless, over a decade later, the Eleventh Circuit in Arrington v. Cobb County, 139 F.3d 865 (11th Cir. 1998), held that "an allegation of a Title VII violation cannot provide the sole basis for a § 1983 claim." Id. at 872. Fortunately, the Court need not decide which case to follow because Plaintiff has also asserted a claim directly under Title VII based on the same alleged conduct. Even assuming a § 1983 action can rest entirely upon a violation of Title VII, any conduct actionable under § 1983 as a violation of Title VII would also be actionable directly under Title VII. Thus, as Plaintiff's § 1983 claim based on a violation of Title VII would be redundant, Court grants summary judgment to Defendants with respect to Plaintiff's § 1983 claim based on Title VII.

**III. CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment on all of Plaintiff's claims is granted.

SO ORDERED, this 28th day of September, 2007.

/s/ Hugh Lawson

**HUGH LAWSON, Judge**

dhc/scs